No. 26-1722

# United States Court of Appeals
# For the Eighth Circuit

SAMANTHA STINSON, *et al.*,
*Plaintiffs-Appellees,*

v.

STATE OF ARKANSAS,
*Intervenor-Appellant.*

On Appeal from the United States District Court
for the Western District of Arkansas,
No. 5:25-cv-05127 (Hon. Timothy L. Brooks)

## Intervenor-Appellant's Opening Brief

TIM GRIFFIN
  Arkansas Attorney General

AUTUMN HAMIT PATTERSON
  Solicitor General

NOAH P. WATSON
  Deputy Solicitor General

OFFICE OF THE ARKANSAS
ATTORNEY GENERAL

101 West Capitol Avenue
Little Rock, AR 72201
(501) 682-2007
autumn.patterson@arkansasag.gov
noah.watson@arkansasag.gov

*Counsel for Intervenor-Appellant*

# SUMMARY OF THE CASE AND STATEMENT REGARDING ORAL ARGUMENT

Act 573 requires schools to post (if donated) historical representations of the Ten Commandments containing a nonsectarian version of the text. Before a Ten Commandments display was even donated, Plaintiffs sued, asserting constitutional claims based on speculation that displays would be posted in their classrooms and that those displays would be offensive and coercive. At the summary-judgment stage, the district court concluded Act 573 has a religious purpose and thus violates the Establishment Clause based on *Stone v. Graham*, 449 U.S. 39 (1980) (per curiam), which exclusively applied the overruled *Lemon* test. The district court also concluded Act 573 violates the Free Exercise Clause because Ten Commandments posters will usurp parents' ability to direct their children's religious upbringing.

This summary-judgment appeal raises important questions, including whether a hypothetical future encounter with a display satisfies Article III, whether *Stone* remains good law when applying it requires courts to apply the *Lemon* test, whether requiring Ten Commandments posters to be hung resembles a founding-era religious establishment, whether Ten Commandments posters can substantially burden free-exercise rights, and whether courts can issue a broad injunction without proof it's necessary to provide Plaintiffs with complete relief. Given the significant issues raised, Arkansas respectfully requests 30 minutes for oral argument.

i

Appellate Case: 26-1722     Page: 2     Date Filed: 05/29/2026 Entry ID: 5645521

# TABLE OF CONTENTS

Summary of the Case and Statement Regarding
Oral Argument.................................................................................................i

Table of Contents .........................................................................................ii

Table of Authorities.....................................................................................iv

Jurisdictional Statement................................................................................1

Statement of Issues ......................................................................................1

Statement of the Case ..................................................................................2

    A.  Arkansas enacted Act 573, and Plaintiffs obtained multiple
        preliminary injunctions against several school districts.............................2

    B.  Arkansas and Plaintiffs filed cross-motions for summary
        judgment .............................................................................................6

    C.  The district court granted summary judgment in Plaintiffs'
        favor and entered a permanent injunction.............................................8

Summary of the Argument............................................................................10

Argument.....................................................................................................13

   I.  Standard of Review .............................................................................13

  II.  Hypothetical Offended-Observer Standing Does Not
      Satisfy Article III.................................................................................13

 III.  Act 573 Does Not Violate the Establishment Clause ...................................18

    A.  *Stone* is not good law and, even if it were, Act 573 is
        constitutional .......................................................................................18

Appellate Case: 26-1722    Page: 3    Date Filed: 05/29/2026 Entry ID: 5645521

      1.   Stone *is not binding*............................................................. 19

      2.  *Even if* Stone *remained good law, its*
         *holding cannot be extended here* ............................................ 21

  B.  Act 573 does not violate the Establishment Clause
     as originally understood and as interpreted by
     binding precedent ....................................................................28

  C.  Act 573 displays are not unconstitutionally coercive ............................36

  D.  At the very least, Plaintiffs are not entitled to summary
     judgment................................................................................ 39

IV.  Act 573 Does Not Violate the Free Exercise Clause ................................... 41

  A.  Act 573 does not burden religious exercise .............................................42

  B.  Even if it imposes a burden, Act 573 is neutral and
     generally applicable................................................................. 45

  C.  Act 573 does not impose a *Yoder*-like burden to
     trigger strict scrutiny.............................................................. 49

V.  The Injunction Exceeds the District Court's Authority ............................. 53

Conclusion................................................................................................ 55

Certificate of Compliance ........................................................................ 57

Certificate of Service................................................................................ 57

Appellate Case: 26-1722    Page: 4    Date Filed: 05/29/2026 Entry ID: 5645521

# Table of Authorities

**Cases**                                                                                    **Page(s)**

*ACLU Neb. Found. v. City of Plattsmouth*,
  186 F.Supp.2d 1024 (D. Neb. 2002) ................................................................. 23

*ACLU Neb. Found. v. City of Plattsmouth*,
  419 F.3d 772 (8th Cir. 2005) (en banc) ....................................... 7, 23, 24, 25, 31

*ACLU of Ohio v. Capitol Square Rev. & Advisory Bd.*,
  243 F.3d 289 (6th Cir. 2001) (en banc) ............................................ 31, 38, 46, 48

*ACLU-NJ v. Twp. of Wall*,
  246 F.3d 258 (3d Cir. 2001) ........................................................................... 14

*Am. Legion v. Am. Humanist Ass'n*,
  588 U.S. 29 (2019) ...................................................................... 13, 16, 22, 24

*B.W.C. v. Williams*,
  990 F.3d 614 (8th Cir. 2021) .......................................................................... 42

*Barber v. Bryant*,
  860 F.3d 345 (5th Cir. 2017) .......................................................................... 14

*Bauchman v. W. High Sch.*,
  132 F.3d 542 (10th Cir. 1997) ........................................................................ 44

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens*,
  496 U.S. 226 (1990) ...................................................................................... 28

*Bowen v. Roy*,
  476 U.S. 693 (1986) ...................................................................................... 44

*Brands Int'l Corp. v. Reach Cos., LLC*,
  103 F.4th 501 (8th Cir. 2024) ......................................................................... 13

*Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*,
  136 F.4th 484 (3d Cir.) ........................................................ 27, 29, 30, 35, 39

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ...................................................................................... 53

iv

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ......................................................46

*City of Ocala v. Rojas*,
   143 S. Ct. 764 (2023)......................................................... 13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013).......................................... 1, 6, 13, 15, 16

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) .......................................................26

*Elk Grove Unified Sch. Dist. v. Newdow*,
   542 U.S. 1 (2004) ...........................................................44

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) .................................................... 1, 18

*Firewalker-Fields v. Lee*,
   58 F.4th 104 (4th Cir. 2023)........................................ 19, 27

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch.
   Dist.*, 832 F.3d 469 (3d Cir. 2016) .....................................14

*Fulton v. City of Philadelphia*,
   593 U.S. 522 (2021) .......................................................46

*Ganulin v. United States*,
   71 F. Supp. 2d 824 ........................................................48

*Groff v. DeJoy*,
   600 U.S. 447 (2023).........................................................19

*Harley v. Zoesch*,
   413 F.3d 866 (8th Cir. 2005) .....................................6, 14, 15

*Hester v. United States*,
   586 U.S. 1104 (2019).......................................................23

*Kennedy v. Bremerton Sch. Dist.*,
   597 U.S. 507 (2022) ................................................*passim*

v

*Lee v. Weisman*,
    505 U.S. 577 (1992) ............................................................ 37, 38

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971)................................................................6

*Lynch v. Donnelly*,
    465 U.S. 668 (1984) ....................................................22, 31, 48

*Mahmoud v. Taylor*,
    606 U.S. 522 (2025) ......................................................*passim*

*McCreary County v. ACLU of Ky.*,
    545 U.S. 844 (2005) ............................................................. 31

*Mirabelli v. Bonta*,
    146 S. Ct. 797 (2026) (per curiam) ......................................50

*Mueller v. Allen*,
    463 U.S. 388 (1983)............................................................. 18

*Murthy v. Missouri*,
    603 U.S. 43 (2024).............................................................. 15

*Myers v. Loudoun Cnty. Pub. Schs.*,
    418 F.3d 395 (4th Cir. 2005) ............................................... 31

*Nathan v. Alamo Heights Indep. Sch. Dist.*,
    173 F.4th 576 (5th Cir. 2026) (en banc) .........................*passim*

*New Doe Child #1 v. United States*,
    901 F.3d 1015 (8th Cir. 2018) ......................................*passim*

*Newdow v. Rio Linda Union Sch. Dist.*,
    597 F.3d 1007 (9th Cir. 2010)..............................................50

*Nikolao v. Lyon*,
    875 F.3d 310 (6th Cir. 2017) ............................................... 43

*Perrier-Bilbo v. United States*,
    954 F.3d 413 (1st Cir. 2020) ...............................................44

Appellate Case: 26-1722     Page: 7     Date Filed: 05/29/2026 Entry ID: 5645521

*Red River Freethinkers v. City of Fargo*,
  679 F.3d 1015 (8th Cir. 2012) ....................................................1, 6, 14

*Roake v. Brumley*,
  170 F.4th 292 (5th Cir. 2026) (en banc) (per curiam) .......................17, 19, 34, 36

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
  490 U.S. 477 (1989) ...................................................................... 19

*Rogers v. Scurr*,
  676 F.2d 1211 (8th Cir. 1982) ........................................................ 53

*Sch. Dist. of Abington Tp. v. Schempp*,
  374 U.S. 203 (1963) ...................................................................38

*Sch. Dist. v. Doe*,
  530 U.S. 290 (2000) ...................................................................... 37

*Shurtleff v. City of Boston*,
  596 U.S. 243 (2022) ............................................................. 29, 31, 37

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ...................................................................... 17

*Steger v. Franco, Inc.*,
  228 F.3d 889 (8th Cir. 2000) ......................................................... 14

*Stone v. Graham*,
  449 U.S. 39 (1980) (per curiam) ..............................................*passim*

*Town of Greece v. Galloway*,
  572 U.S. 565 (2014) ..............................................................*passim*

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ............................................................. 2, 53, 54

*Van Orden v. Perry*,
  545 U.S. 677 (2005) ..............................................................*passim*

**Statutes**

5 U.S.C. § 6103 ...................................................................................48

Appellate Case: 26-1722    Page: 8    Date Filed: 05/29/2026 Entry ID: 5645521

28 U.S.C. § 1291 ...................................................................................... 1

28 U.S.C. § 1331 ...................................................................................... 1

Ark. Code Ann. § 1-4-133 ................................................................*passim*

**Other Authorities**

Adam Laats, *Our Schools, Our Country*, 36 J. of Religious
Hist. 319 (2012).................................................................................. 33

D. Arkin and E. Ortiz, *How some Texas teachers are fighting the Ten
Commandments law in classrooms*, NBC News (Sept. 14, 2025),
https://tinyurl.com/3ctny3p6 ....................................................... 17, 40

Gov't Aff. Comm. Hr'g, at 12:34:30-36:08 (Apr. 2, 2025),
https://tinyurl.com/mr28c3za ............................................................. 25

*H.B. 71 Guidance for Louisiana Schools*,
https://tinyurl.com/45u2pvbm ...................................................... 17, 40

Jenna Weismann Joselit, *Set in Stone: America's Embrace of the Ten
Commandments* (2017).......................................................................... 33

John C. Jeffries, Jr. & James E. Ryan, *A Political History of the
Establishment Clause*, 100 Mich. L. Rev. 279 (2001) .......................... 32

Letter from Chief Justice William H. Taft to Henry Ford re:
McGuffey's Readers (Oct. 31, 1924) ................................................... 34

McGuffey's Fourth Eclectic Reader (1920 rev. ed.)............................... 34

Mark David Hall & Andrea Picciotti-Bayer, *Ten Commandments in the
Public Square and Public Schools*, 34 Wm. & Mary Bill Rts. J. 175
(2025) ...........................................................................25, 32, 34

Michael W. McConnell, *Establishment and Disestablishment at
the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary
L. Rev. 2105 (2003)..............................................................29, 31, 32

Appellate Case: 26-1722   Page: 9   Date Filed: 05/29/2026 Entry ID: 5645521

Nathan S. Chapman & Michael W. McConnell, *Agreeing to Disagree: How the Establishment Clause Protects Religious Diversity and Freedom of Conscience* (2023) ........................................................ 35

Nathan S. Chapman, *Forgotten Federal-Missionary Partnerships: New Light on the Establishment Clause*, 96 Notre Dame L. Rev. 677 (2020) .......................................................................................... 32

Stephanie H. Barclay et al., *Original Meaning and the Establishment Clause: A Corpus Linguistics Analysis*, 61 Ariz. L. Rev. 505 (2019) ..................... 35

Thomas H. Bickel, Engel *Was Grievously Wrong and Should Be Overruled*, 2023 Harv. J.L. & Pub. Pol'y Per Curiam 6 (2023) .................................. 32

Appellate Case: 26-1722    Page: 10    Date Filed: 05/29/2026 Entry ID: 5645521

# JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331.  On March 16, 2026, the district court entered judgment for Plaintiffs, App. 2452, R. Doc. 189, and Arkansas timely appealed on April 14, 2026, R. Doc. 194.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

1.      Whether Plaintiffs have standing to challenge Act 573 (a law requiring historical representations of the Ten Commandments to be displayed, if donated) when they did not know what a display and its context would look like or show that any donation had occurred or was certainly impending when they filed suit.

Apposite Authority: *FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013); *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015 (8th Cir. 2012).

2.      Whether the district court erred by concluding Act 573 violates the Establishment Clause based on purportedly improper legislative purpose and overruled precedent.

Apposite Authority:  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022); *Town of Greece v. Galloway*, 572 U.S. 565 (2014); *New Doe Child #1 v. United States*,

1

Appellate Case: 26-1722    Page: 11    Date Filed: 05/29/2026 Entry ID: 5645521

901 F.3d 1015 (8th Cir. 2018); *Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576 (5th Cir. 2026) (en banc).

3.      Whether the district court erred by concluding passive, historical displays of the Ten Commandments pursuant to Act 573 violate the Free Exercise Clause.

Apposite Authority: *Mahmoud v. Taylor*, 606 U.S. 522 (2025); *New Doe Child #1 v. United States*, 901 F.3d 1015 (8th Cir. 2018); *Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576 (5th Cir. 2026) (en banc).

4.      Whether the district court erred by granting injunctive relief that extends to schools and classrooms that Plaintiffs will never enter.

Apposite Authority: *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

## STATEMENT OF THE CASE

**A. Arkansas enacted Act 573, and Plaintiffs obtained multiple preliminary injunctions against several school districts.**

In 2025, Arkansas enacted Act 573, which provides for "a historical representation of the Ten Commandments" to be posted in public-school classrooms and libraries if funds are donated for that purpose or a display is donated. Ark. Code Ann. § 1-4-133(a)(1)(B)(i)-(ii), (b). Act 573 requires that the donated display be "at least sixteen inches by twenty inches" with text "legible to a person with average vision," and that it be "in a conspicuous place." *Id.* § 1-4-133(a)(1), (a)(1)(B)(ii)(a)-(b).

2

Appellate Case: 26-1722    Page: 12    Date Filed: 05/29/2026 Entry ID: 5645521

The text of that "historical representation," *id.* § 1-4-133(a)(1)(B)(i)-(ii), almost identically mirrors the text on the Ten Commandments monument in *Van Orden v. Perry*, 545 U.S. 677, 707 (2005) (Stevens, J., dissenting) (quoting text), which was crafted "with a committee composed of members of several faiths" "to find a nonsectarian text," *id.* at 701 (Breyer, J., concurring in judgment), and held to be constitutional, *id.* at 703; *see id.* at 692 (plurality). Act 573 provides the following text:

> The Ten Commandments
> I am the Lord thy God.
> Thou shalt have no other gods before me.
> Thou shalt not make to thyself any graven images.
> Thou shalt not take the Name of the Lord thy God in vain.
> Remember the Sabbath day, to keep it holy.
> Honor thy father and thy mother, that thy days may be long upon the land which the Lord thy God giveth thee.
> Thou shalt not kill.
> Thou shalt not commit adultery.
> Thou shalt not steal.
> Thou shalt not bear false witness against thy neighbor.
> Thou shalt not covet thy neighbor's house.
> Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's.

Ark. Code Ann. § 1-4-133(a)(1)(B)(iii).

Before the Act's effective date, parents sued four school districts on behalf of themselves and 14 students in those districts. R. Doc. 2, at 4-6. Plaintiffs alleged Act 573's implementation would violate the Establishment and Free Exercise Clauses.

3

R. Doc. 2, at 31-34. They did not allege they had seen an Act 573 display, any displays had been donated, or any funds had been donated to purchase displays for their classrooms. Nevertheless, Plaintiffs filed a preliminary-injunction motion, requesting Defendant school districts be enjoined from displaying the Ten Commandments in any classroom or library. R. Doc. 8, at 1-4. Arkansas intervened to defend the constitutionality of its democratically enacted law, R. Doc. 39, and filed a combined motion to dismiss and preliminary-injunction opposition, R. Doc. 53.

But the district court issued a preliminary injunction on both Plaintiffs' Establishment and Free Exercise Clause claims. R. Doc. 71. Arkansas appealed. R. Doc. 78. After Act 573's effective date, Plaintiffs moved to amend their complaint to add new plaintiffs and a new school district. R. Doc. 79. Arkansas opposed that motion, explaining that allowing amendment or supplementation of the complaint would "complicate" and "delay[]" the appeal. R. Doc. 84, at 7, 8. Over those objections, the district court allowed Plaintiffs to file a new complaint, construing it as a supplemental complaint, and *sua sponte* decided to "set[] the matter for expedited discovery and briefing on dispositive motions." R. Doc. 86, at 1, 4 n.1. Ultimately, the district court granted another preliminary injunction, R. Doc. 111, which (as Arkansas predicted) delayed appellate resolution when Arkansas again appealed, R. Doc. 117, and this Court consolidated the appeals, R. Doc. 120. Arkansas moved to stay

4

proceedings pending the appeal, R. Doc. 115, as well as moving in the alternative for a one-month extension of the district court's *sua sponte* expedited deadlines based on counsel's significant life events (with one attorney getting married and the other attorney having a baby), R. Doc. 114. The district court denied not only the stay motion, but also the unopposed extension motion. R. Doc. 122. It explained that it had already "anticipated—and rejected—"any arguments in favor of a stay pending appeal and that "personal obligations and heavy workload" were not "good cause" to extend deadlines. *Id.* at 1-2.

About a month later, Plaintiffs moved for leave to supplement their complaint again to add more plaintiffs and another school district. R. Doc. 123. Arkansas opposed, again explaining that granting the motion would further complicate and delay appellate resolution, R. Doc. 127, at 5-7. But history repeated itself: the district court entered a preliminary injunction, R. Doc. 149; Arkansas appealed, R. Doc. 153; and this Court consolidated and reset appeal deadlines, R. Doc. 155.

After the district court entered a permanent injunction and final judgment on the parties' cross-motions for summary judgment, App. 2426-52; R. Docs. 188, 189, this Court dismissed Arkansas's appeals of the preliminary injunctions as moot, *see* Judgment, *Stinson v. Arkansas*, No. 25-2713 (8th Cir. Apr. 23, 2026).

5

## B. Arkansas and Plaintiffs filed cross-motions for summary judgment.

At the summary-judgment stage, Arkansas argued that original-Plaintiffs had not seen an Act 573 display when they filed suit, did not know what a display or its surrounding context would look like, and didn't prove that Defendants would imminently receive an Act 573 display to post in their classrooms. R. Doc. 165, at 3-4. Indeed, when the lawsuit was filed, Defendant school districts had "not received" and did "not presently intend" to post Act 573 displays. R. Doc. 49, at 5-6, 8-9, 11-12, 14-15. That meant Plaintiffs lacked standing both because their alleged injuries were dependent "on speculation about … independent actors" and because they failed to make the required "showing of 'direct and unwelcome personal contact.'" R. Doc. 165, at 3-4 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013), then *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1023 (8th Cir. 2012)). And the fact that one school-district Defendant received donated displays after the lawsuit began did "not change th[e] analysis" because "'standing is determined as of the lawsuit's commencement' and facts are considered 'as they existed at that time.'" R. Doc. 165, at 4 (quoting *Harley v. Zoesch*, 413 F.3d 866, 872 (8th Cir. 2005)).

On the merits of the Establishment Clause, Arkansas argued that Plaintiffs' whole case rested on the now-abrogated decision in *Stone v. Graham*, 449 U.S. 39 (1980) (per curiam), whose "entire foundation" was *Lemon v. Kurtzman*, 403 U.S.

Appellate Case: 26-1722    Page: 16    Date Filed: 05/29/2026 Entry ID: 5645521

602 (1971)—which was an "'ahistorical, atextual' approach to discerning 'Establishment Clause violations.'" R. Doc. 165, at 5 (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534 (2022) (citation omitted)). Arkansas instead urged the district court to apply "the historical framework set forth in [*Town of Greece v.*] *Galloway*[, 572 U.S. 565 (2014),] and *Kennedy*." R. Doc. 165, at 11. Citing both history and precedent, Arkansas explained that the text of Act 573 is nonsectarian. R. Doc. 165, at 8-9. Arkansas also explained that "displaying the Ten Commandments fits within historical practices that were not understood to be religious establishments," *id.* at 12—from serving as "passive acknowledgement[s] of the roles of God and religion in our Nation's history," *id.* at 13 (quoting *ACLU Neb. Found. v. City of Plattsmouth*, 419 F.3d 772, 778 (8th Cir. 2005) (en banc)), to being a basis for active instruction "throughout the 1800s and 1900s," *id.* at 14 (citing Pls.' Expert Rpt.).

On the merits of the Free Exercise Clause, Arkansas argued that Act 573 "is a neutral, generally applicable law" that is, at most, an "incidental burden[] on [Plaintiffs'] free exercise." R. Doc. 165, at 19 (citing *New Doe Child #1 v. United States*, 901 F.3d 1015, 1025 (8th Cir. 2018) ("[I]ncidental burdens on religion are usually not enough to make out a free exercise claim.")). That's because Act 573 doesn't "suppress[] … religion or religious conduct;" indeed, it "does 'not direct Plaintiffs to *do* anything.'" R. Doc. 165, at 20 (quoting *New Doe Child*, 901 F.3d at 1025, 1026).

7

Appellate Case: 26-1722    Page: 17    Date Filed: 05/29/2026 Entry ID: 5645521

Further, strict scrutiny doesn't apply, Arkansas explained, because that analysis applies only when (1) a plaintiff challenges schools' requirements that usurp parents' control of their children's religious development and (2) those requirements "substantially interfer[e] with the [child's] religious development" or "pose[ ] 'a very real threat of undermining' the religious beliefs and practices the parent wishes to instill in the child."  R. Doc. 165, at 23-24 (quoting *Mahmoud v. Taylor*, 606 U.S. 522, 556 (2025)).  Arkansas further explained why Plaintiffs' challenge to passive wall displays meets neither element.  *Id.* at 23-26.

### C. The district court granted summary judgment in Plaintiffs' favor and entered a permanent injunction.

On March 16, 2026, the district court granted Plaintiffs' summary-judgment motion and denied Arkansas's, permanently enjoining Defendants from enforcing Act 573 throughout their districts.  App. 2426-52; R. Docs. 188, 189.  The district court first found original-Plaintiffs had standing based, in part, on Springdale School District's purported receipt of "more than 20,000 posters" "by the date of the preliminary injunction," App. 2435; R. Doc. 188, at 10, even though Springdale rejected those posters, App. 1924-25; R. Doc. 168-11, at 4-5.

Next, the district court turned to the Establishment Clause claim.  It initially held that *Stone* "is binding," and cited its earlier preliminary-injunction order.  App. 2441; R. Doc. 188, at 16.  After briefly attempting to reframe *Stone* as being concerned

8

about coercion, not purpose, the district court applied a secular-purpose test and concluded Act 573 violates the Establishment Clause. App. 2441-45; R. Doc. 188, at 16-20. Because Act 573 doesn't require instruction regarding the Ten Commandments, the district court concluded Act 573's purpose must be "to proselytize." App. 2444; R. Doc. 188, at 19. And while the district court disclaimed a "need to delve into the motivations of individual legislators," it proceeded to quote a few remarks from a few officials while ignoring other remarks and legislative proceedings focusing on the historical significance of the Ten Commandments. App. 2444-45; R. Doc. 188, at 19-20.

The district court reasoned that the Supreme Court did not mandate a historical-practices-and-understanding test "in every context," thereby suggesting *Lemon* was not overruled in all contexts, before purporting to apply the historical test in the alternative. App. 2445-47; R. Doc. 188, at 20-22. But the district court did not address any of the hallmarks of a religious establishment, *see* R. Doc. 165, at 11-15 (arguing Act 573 doesn't have any hallmark of a founding-era establishment), and it expressly concluded that "history is both unhelpful and irrelevant" at the end of its analysis, App. 2447; R. Doc. 188, at 22.

On the Free Exercise Clause claim, the district court concluded strict scrutiny applied and held that Act 573 "interfere[s] with the[] [parents'] ability to provide

Appellate Case: 26-1722     Page: 19     Date Filed: 05/29/2026 Entry ID: 5645521

religious instruction and will induce their children to suppress their own religious or non-religious belief." App. 2448; R. Doc. 188, at 23. It reasoned that students will see Act 573 displays and parents will explain them. *Id.* According to the district court, it is irrelevant that Act 573 doesn't require or prohibit any religious practice. *Id.* Further, in finding Act 573 is not religiously neutral, the district court said, without citing precedent or any expert report, that the text is "Protestant Christian scripture." App. 2450; R. Doc. 188, at 25; *see* App. 2428; R. Doc. 188, at 3 ("derived from the Protestant King James Bible"); App. 2449; R. Doc. 188, at 24 ("denominationally preferential").

Finally, the district court enjoined Defendants from enforcing Act 573 everywhere throughout their districts, not just the classrooms or places Plaintiffs proved their students would be. App. 2450-51, R. Doc. 188, at 25-26. After the district court entered its permanent injunction and judgment, Arkansas timely appealed. R. Doc. 194.

## SUMMARY OF THE ARGUMENT

The district court's analysis is flawed across the board, from standing to the merits, to the remedy. When Plaintiffs filed suit, they had never seen an Act 573 display, did not know when or if they would see one, and didn't know what a display or its surrounding context would look like. In other words, their asserted injury was

presumed future offense and coercion caused by a hypothetical, future Ten Commandments display. That's insufficient to satisfy Article III, so the district court should have dismissed the case rather than allowing new parties to be added to the case and granting summary judgment for all Plaintiffs. The district court also erred on scope of relief. It granted an overbroad injunction that extended not only to the classrooms of Plaintiffs who lacked standing but also to every single classroom in Defendants' school districts.

The district court erred on the merits too. Regarding their Establishment Clause claims, the district court concluded Act 573 is unlawful because its purported purpose "is to proselytize." App. 2444; R. Doc. 188, at 19. But Act 573's text demonstrates that its actual purpose is to acknowledge the Ten Commandments' historical significance and, regardless, the Supreme Court has rejected the *Lemon* test that "called for an examination of a law's purposes, effects, and potential for entanglement with religion." *Kennedy*, 597 U.S. at 537. Courts are instead supposed to focus on the Establishment Clause's "original meaning and history" and assess whether a challenged law or practice resembles the "hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Id.* at 536-37. Plaintiffs failed to prove Act 573 resembles any hallmark of historical establishment. Indeed, the district court did not even discuss the hallmarks despite

11

purporting to "gamely" undertake a historical analysis before concluding that "history is both unhelpful and irrelevant." App. 2445-47; R. Doc. 188, at 20-22. Because Plaintiffs failed to prove Act 573 is inconsistent with historical practices and understandings, Act 573 does not violate the Establishment Clause.

The district court's analysis regarding the free-exercise claims fares no better. A historical Ten Commandments poster on a wall does not impose a substantial burden on free-exercise rights. It does not prevent Plaintiffs from doing anything required by their beliefs, nor does it obligate Plaintiffs to do anything prohibited by their beliefs. The district court nonetheless concluded Act 573 "burdens parent-Plaintiffs' rights to direct their children's religious upbringing" based on *Mahmoud*. App. 2449; R. Doc. 188, at 24. But this case could not be further afield from *Mahmoud* and other cases where the Supreme Court has concluded strict scrutiny applies. A Ten Commandments poster does not usurp parents' right to direct their students' religious upbringing and involves none of the same coercion concerns as curricular books expressing hostility towards religious views and teachers "reprimand[ing] any children who disagree" with the books' viewpoint. 606 U.S. at 556.

This Court should reverse and render judgment dismissing Plaintiffs' claims. In the alternative, it should reverse and remand for fact finding and narrow the scope of injunctive relief.

12

Appellate Case: 26-1722    Page: 22    Date Filed: 05/29/2026 Entry ID: 5645521

## ARGUMENT

### I.   STANDARD OF REVIEW

The Court "review[s] *de novo* the district court's resolution of cross-motions for summary judgment, viewing the evidence in the light most favorable to the non-moving party and giving the nonmoving party the benefit of all reasonable inferences." *Brands Int'l Corp. v. Reach Cos., LLC*, 103 F.4th 501, 504 (8th Cir. 2024). At the summary-judgment stage, plaintiffs "bear[] the burden of establishing standing" with "specific facts." *Clapper*, 568 U.S. at 411-12 (citation omitted).

### II.   HYPOTHETICAL OFFENDED-OBSERVER STANDING DOES NOT SATISFY ARTICLE III.

Even assuming offended-observer precedent remains good law,[1] original-Plaintiffs failed to prove standing. That's because they had not encountered any Act 573 display, did not show an encounter was certainly impending, and did not know what a potential future display and its surrounding context would look like when they sued.

---

[1] Arkansas preserves the argument that this Court's offended-observer standing precedent should be overruled because it "has no more foundation in the law than the *Lemon* test that inspired it." *City of Ocala v. Rojas*, 143 S. Ct. 764, 765 (2023) (Gorsuch, J., respecting denial of certiorari); *see Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 84 (2019) (Gorsuch, J., concurring).

13

In *Red River Freethinkers v. City of Fargo*, this Court held that "in so-called 'passive-display' cases" plaintiffs challenging a Ten Commandments display must have a "direct and unwelcome personal contact" with the display to have standing. 679 F.3d 1015, 1023 (8th Cir. 2012); *see Barber v. Bryant*, 860 F.3d 345, 353-54 (5th Cir. 2017) (a personal encounter is necessary for standing in a religious-display case; a person "cannot confront statutory text"); *ACLU-NJ v. Twp. of Wall*, 246 F.3d 258, 266 (3d Cir. 2001) (Alito, J.) (no standing where plaintiff did not show she had seen the challenged display); *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476-80 (3d Cir. 2016) (collecting cases and then holding child-plaintiff lacked standing where "she did not understand the monument" and was unbothered by it until after the suit's commencement).  To satisfy standing's injury requirement, original-Plaintiffs needed to show, at a minimum, that an offensive encounter would occur based on "the facts as they existed" when "the lawsuit[] commence[d]." *Harley*, 413 F.3d at 872 (quoting *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000)).  They failed to do so, and to overcome that failure, the district court's standing analysis focused on "the date of the preliminary injunction," App. 2435; R. Doc. 188, at 10 (analyzing "pre-injunction" and "post-injunction" donations), which was almost two months *after* the complaint was filed, *see* R. Doc. 2.

14

Original-Plaintiffs did not have an Article III injury when they sued on June 11, 2025. At that point, not a single display had been donated and accepted, much less posted. R. Doc. 181, at 71; R. Doc. 49, at 4-15. Because there was no Act 573 display in any classroom, much less in student-Plaintiffs' classrooms, when original-Plaintiffs filed suit, there had been no direct or unwelcome personal contact with a display. And they failed to prove any future contact was "certainly impending," *Clapper*, 568 U.S. at 401,[2] much less that future contact would cause injury.

When this suit was filed, no Defendant intended to post Act 573 displays. R. Doc. 49, at 5-6, 8-9, 11-12, 14-15. That's because Act 573 displays would only be posted "[i]f funds" are available for the displays "through voluntary contributions"

---

[2] Evidence that some displays were donated to *one* Defendant months *after* the lawsuit was filed doesn't change this analysis, R. Doc. 69, at 1-2; App. 613; R. Doc. 70, at 1, because standing is assessed based on facts that existed when the lawsuit began, *see Harley*, 413 F.3d at 872. Regardless, that single donation does nothing to show standing as to other Defendants. *See Murthy v. Missouri*, 603 U.S. 43, 44 (2024) ("standing is not dispensed in gross," meaning plaintiffs must prove standing "against each defendant" (citation omitted)). And if later facts were relevant, original-Plaintiffs would still lack standing because they cannot show that original-Defendants currently have enough donated displays to post one in Plaintiffs' classrooms. *See, e.g.*, App. 1925-26; R. Doc. 168-11, at 5-6 (Springdale rejected most posters and accepted an unspecified number in August 2025); App. 2234; R. Doc. 180-1, at 3 ("no donated posters were accepted by the schools that the Student Plaintiffs attended"); R. Doc. 181, at 71.

Appellate Case: 26-1722     Page: 25     Date Filed: 05/29/2026 Entry ID: 5645521

or if compliant displays were "donated." Ark. Code Ann. § 1-4-133(a)(1), (b). And the only fundraising efforts original-Plaintiffs identified are some that appear to postdate the complaint's filing. *E.g.*, App. 134-35; R. Doc. 58-1, at 2-3.

Original-Plaintiffs' alleged injuries thus "rest[ed] on speculation about the decisions of independent actors," *Clapper*, 568 U.S. at 414, which is insufficient for standing. And their alleged injuries rested on multiple guesses—that a donation would occur and that the hypothetical future display and its context would lead their students to feel coerced. But the law requires "a historical representation of the Ten Commandments," potentially alongside the national motto and the U.S. and Arkansas flags. Ark. Code Ann. § 1-4-133(a)(1). This indicates donated displays could include historical context about how the Ten Commandments are "one of the foundations of our legal system," *Am. Legion*, 588 U.S. at 53, and play a role "in America's heritage," *Van Orden*, 545 U.S. at 689 (plurality). And the law doesn't require that Act 573 displays be the *only* item on classroom walls, so the displays might be surrounded by other documents that have historical significance or by countless things that might alter one's feelings about a display. *See id.* at 701 (Breyer, J., concurring) ("the Ten Commandments can send different messages in different contexts"). Indeed, different posters have been created for donation, *compare* App. 223; R. Doc. 58-1, at 91, *with* App. 2439; R. Doc. 188, at 14, and many other variations

16

Appellate Case: 26-1722    Page: 26    Date Filed: 05/29/2026 Entry ID: 5645521

are possible, *see H.B. 71 Guidance for Louisiana Schools*, https://tinyurl.com/45u2pvbm.  Similarly, various items could be posed around an Act 573 poster, which could change the perceived message and Plaintiffs' feelings towards it. *See* D. Arkin and E. Ortiz, *How some Texas teachers are fighting the Ten Commandments law in classrooms*, NBC News (Sept. 14, 2025), https://tinyurl.com/3ctny3p6.

Because it was unknown if there would be donations, original-Plaintiffs' alleged worries about future pressure to venerate the Ten Commandments were "abstract," conjectural, and hypothetical—not "actual or imminent"—injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016).  Their alleged injury from a potential future encounter with a poster is nothing like the concrete injury in *Mahmoud* where the challenged policy had already been implemented and there was "little mystery" as to the content of the curricular instruction when the suit was filed.  *See* 606 U.S. at 537, 554.  The same is not true here, and inquiries under the Establishment and Free Exercise Clauses can be "fact-intensive."  *Id.* at 550; *see Roake v. Brumley*, 170 F.4th 292, 300 (5th Cir. 2026) (en banc) (per curiam) (addressing ripeness and recognizing the Establishment Clause can require a "contextual inquiry").

In sum, original-Plaintiffs' alleged injury was insufficient for Article III at the time the suit began.  *See Roake*, 170 F.4th 292.  Original-Plaintiffs' "general legal, moral, ideological, or policy objection" to Act 573 doesn't satisfy Article III's injury-

Appellate Case: 26-1722    Page: 27    Date Filed: 05/29/2026 Entry ID: 5645521

in-fact requirement. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). This Court should decline to extend offended-observer standing to a new context—hypothetical future offense—and instead conclude Plaintiffs lacked standing when the complaint was filed. And assuming later-added Plaintiffs could cure the jurisdictional defects, if the Court does not reverse the summary judgment in favor of Plaintiffs and render judgment for Arkansas (as it should), it should at least narrow the permanent injunction. *See infra* 53-55.

## III.   ACT 573 DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE.

### A. *Stone* is not good law and, even if it were, Act 573 is constitutional.

The district court wrongly concluded that *Stone* is controlling, but its opinion highlights why it's not. By applying *Stone*, the district court impermissibly applied the repudiated *Lemon* test—it wrongly concluded that Act 573 violates the Establishment Clause because the law has only a religious purpose. App. 1441-45; R. Doc. 188, at 16-20. The district court claimed "reluctanc[e] to attribute unconstitutional motives to the State[ ]" before doing so. *See* App. 2444; R. Doc. 188, at 19 (quoting *Mueller v. Allen*, 463 U.S. 388, 394-95 (1983) (analyzing the first *Lemon* prong)). Regardless, even if *Stone* were still binding, it should not be extended to the different factual circumstances here.

Appellate Case: 26-1722    Page: 28    Date Filed: 05/29/2026 Entry ID: 5645521

### 1. Stone *is not binding.*

In *Stone*, the Supreme Court expressly applied the *Lemon* test and held a Kentucky statute requiring the Ten Commandments to be posted in public schools was unconstitutional. 449 U.S. at 40. *Stone* concluded that the law's objective was "to induce the schoolchildren to read, meditate upon, perhaps to venerate and obey, the Commandments," which "violate[d] the first part of the *Lemon v. Kurtzman*, test, and thus the Establishment Clause." 449 U.S. at 42-43. Accordingly, "*Stone* was *Lemon* all the way down." *Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576, 591 (5th Cir. 2026) (en banc). And the Supreme Court has now clearly abrogated "*Lemon* and its endorsement test offshoot." *Kennedy*, 597 U.S. at 534; *see Groff v. DeJoy*, 600 U.S. 447, 460 & n.7 (2023) (acknowledging *Lemon* was "abrogated" and citing *Kennedy*); *Firewalker-Fields v. Lee*, 58 F.4th 104, 121 n.5 (4th Cir. 2023) ("*Lemon* and its ilk are not good law."). *Stone* is therefore no longer good law.

To be sure, the Supreme Court has "the prerogative of overruling its own decisions," and lower courts should apply a *directly* controlling case even when it "*appears* to rest on reasons rejected in some *other* line of decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) (emphases added). But *Stone* doesn't simply "appear" to rest on rejected reasons, *id.*; it "relies on *precedent* that the Supreme Court has *overturned.*" *Roake*, 170 F.4th at 301 (Ho, J., concurring).

19

And *Lemon*, *Stone*, and *Kennedy* are in the *same* line of cases, as demonstrated by *Kennedy*.

In *Kennedy*, the Supreme Court criticized the district court and Ninth Circuit for "overlook[ing] … that th[e Supreme] Court long ago abandoned *Lemon*," 597 U.S. at 534, and concluded that the lower courts "erred by failing to heed" guidance in cases like *Galloway* and *American Legion* that "the Establishment Clause must be interpreted by 'reference to historical practices and understandings,'" *id.* at 535-36. Although *Galloway* and *American Legion* involved legislative prayer and a monument on government land, the Court nonetheless cited these cases as the guidance that lower courts erroneously overlooked even though it had not yet explicitly overruled *Lemon*. *See* 597 U.S. at 534; *id.* at 572 (Sotomayor, J., dissenting). Now that the Supreme Court has explicitly overruled *Lemon*, the district court's refusal to heed the Supreme Court's guidance and its insistence on hewing to the *Lemon* test, as articulated in *Stone*, is even clearer error.

Indeed, the district court openly spurns the historical-practices-and-understandings test the Supreme Court set forth in *Kennedy*, claiming the Supreme Court "did not endorse using this test in every context." App. 2445; R. Doc. 188, at 20. But that's contradicted by *Kennedy* in which the Supreme Court "stressed" that "[a]n analysis focused on original meaning and history" is "the rule rather than some

20

Appellate Case: 26-1722     Page: 30     Date Filed: 05/29/2026 Entry ID: 5645521

'exception' within the 'Court's Establishment Clause jurisprudence.'" 597 U.S. at 536 (quoting *Galloway*, 572 U.S. at 575). And it flouts this Court's precedent that instructs "inferior court[s]" "to hew closely to the [Supreme] Court's specific, contemporary guidance," as this Court did in *New Doe Child*. 901 F.3d at 1019–20. There, this Court acknowledged the Supreme Court's "unequivocal directive": "[T]he Establishment Clause *must* be interpreted by reference to historical practices and understandings." 901 F.3d at 1020 (quoting *Galloway*, 572 U.S. at 576).

Accordingly, *Stone* is not binding; the historical-practices-and-understandings test is. The district court erred by concluding otherwise.

### 2. Even if Stone *remained good law, its holding cannot be extended here.*

Alternatively, even if *Stone* were still binding in cases "identical in all material respects," App. 2441; R. Doc. 188, at 16, this case is not identical, so *Stone* cannot be extended here. The district court reached a contrary conclusion not only by overlooking differences that exist between this case and *Stone*, but also by overlooking how the Supreme Court had narrowed *Stone* long before *Kennedy*.

In the decades following *Stone*, the Supreme Court narrowed *Stone*'s holding and held that not all religious acknowledgments must be purged from public spheres. For example, in *Marsh v. Chambers*, the Supreme Court held that opening legislative sessions with prayers ("by a chaplain paid by the State") did not run afoul of the

Appellate Case: 26-1722     Page: 31     Date Filed: 05/29/2026 Entry ID: 5645521

Establishment Clause, recognizing that prayers could serve the secular purpose of acknowledging "beliefs widely held among the people of this country." 463 U.S. 783, 784, 792 (1983). And the following year, the Supreme Court concluded that a city had "legitimate secular purposes" for displaying a nativity scene—namely, "to celebrate the Holiday and to depict the origins of that Holiday." *Lynch v. Donnelly*, 465 U.S. 668, 681 (1984). The Supreme Court explained that the *Stone* display was "motivated *wholly* by religious considerations." *Id.* at 679-80 (emphasis added). With this narrowing, it logically follows that a Ten Commandments display that also serves secular purposes would create no Establishment Clause problem even before *Lemon*'s demise. And that's especially true given multiple Supreme Court cases decided after *Stone* proclaimed that the Ten Commandments "have historical significance as one of the foundations of our legal system," public depictions of which "serve secular purposes." *Am. Legion*, 588 U.S. at 53; *see id.* at 60; *see, e.g.*, *Van Orden*, 545 U.S. at 688-90 (plurality) (acknowledging the "Ten Commandments have an undeniable historical meaning" and played a "role" "in our Nation's heritage"); *id.* at 701 (Breyer, J., concurring) (recognizing the Ten Commandments can convey "a secular moral message (about the proper standards of social conduct)" and "a historical message (about a historic relation between those standards and the law)").

Appellate Case: 26-1722    Page: 32    Date Filed: 05/29/2026 Entry ID: 5645521

Accordingly, even if *Stone* were good law, it would have to be applied narrowly in the same circumstances, not broadly in different circumstances. *See, e.g.*, *Hester v. United States*, 586 U.S. 1104, 1105 (2019) (Alito, J., concurring in certiorari denial) ("suspect precedents" should not be extended). Yet the district court applied *Stone* broadly, not narrowly, and it did so despite materially different circumstances that exist here.

Act 573's text is different than the law at issue in *Stone*. For starters, Act 573 requires a "historical representation" reflecting the purpose of the statute, Ark. Code Ann. § 1-4-133(a)(1)(B)(i)—to acknowledge the Ten Commandments' historical importance. Furthermore, as even Plaintiffs acknowledge, "[*u*]*nlike in Stone*, Arkansas lawmakers" set forth the Ten Commandments text that must be included in the display. R. Doc. 9, at 17 (emphasis added). And the legislature chose to use a text that is nearly identical to the text that was approved in *Van Orden* and in *City of Plattsmouth*.[3] *Compare Van Orden*, 545 U.S. at 707 (Stevens, J., dissenting), *and ACLU Neb. Found. v. City of Plattsmouth*, 186 F.Supp.2d 1024, 1028 (D. Neb. 2002),

---

[3] Act 573's text deviates from the text on *Van Orden*'s monument in one respect: Act 573 omitted some capitalization, which could be viewed as highlighting the text's religious aspects. *See Van Orden*, 545 U.S. at 739 (Souter, J., dissenting) (criticizing the use of "all capital letters," which made the phrase "I AM the LORD thy God" the "most eye-catching segment").

Appellate Case: 26-1722   Page: 33   Date Filed: 05/29/2026 Entry ID: 5645521

*rev'd* 419 F.3d 772 (en banc), *with* Ark. Code Ann. § 1-4-133(a)(1)(B)(iii).  That text includes no scripture references and doesn't number the commands; it is a nonsectarian text that is not aligned with one particular faith tradition.  *See Van Orden*, 545 U.S. at 701 (Breyer, J., concurring) (noting that the text of the monument was selected "with a committee composed of members of several faiths in order to find a nonsectarian text"); *City of Plattsmouth*, 419 F.3d at 773 & n.2 (recognizing the "nonsectarian" nature of text); App. 688, 698-700; R. Doc. 164-1, at 14, 24-26 (describing how monument text was intended to be a "version of the Ten Commandments which was not identifiable to any particular religious group," which is why the text is not numbered).[4]  The statute's text thus makes this case distinguishable from *Stone*.

The district court ignored these material distinctions when claiming Act 573 is "identical" to Kentucky's law and applying *Stone*.  App. 2440-45; R. Doc. 188, at 15-20.  What's more, when describing Act 573 earlier, it inaccurately asserted Act 573's text was "derived from the Protestant King James Bible" and elsewhere

---

[4] Act 573 would not be unconstitutional even if it did mandate a "sectarian" version of the text.  After all, "'an insistence on nonsectarian' religious speech is inconsistent with our Nation's history and traditions," *Am. Legion,* 588 U.S. at 76-77 (Thomas, J., concurring) (quoting *Galloway,* 572 U.S. at 578), and a legislative prayer or government display does not "violate[] the Establishment Clause any time it is given in the name of a figure deified by only one faith or creed." *Galloway,* 572 U.S. at 580-81 (citing *Van Orden,* 545 U.S. at 688).

24

denigrated Arkansas's claim that Act 573's text is nonsectarian as "misleading at best." App. 2428, 2449 n.6; R. Doc. 188, at 3, 24 n.6. But the district court doesn't get to override precedent from this Court and the Supreme Court describing text on which Act 573 was modeled as nonsectarian, *see Van Orden*, 545 U.S. at 701 (Breyer, J., concurring); *City of Plattsmouth*, 419 F.3d at 773 & n.2, nor does it get to ignore evidence that the text's language resembles various editions of Exodus, App. 700; R. Doc. 164-1, at 26, and is not identical to what's found in a "Protestant Bible," *see* Gov't Aff. Comm. Hr'g, at 12:34:30-36:08 (Apr. 2, 2025), https://tinyurl.com/mr28c3za (testimony from a pastor opposing Act 573, who described the text as "a cobbled together version"); *see also* Mark David Hall & Andrea Picciotti-Bayer, *Ten Commandments in the Public Square and Public Schools*, 34 Wm. & Mary Bill Rts. J. 175, 229 (2025) ("[T]he text (in both translation and presentation) is nonsectarian, not Jewish, Catholic, or Protestant.").

In any event, the indisputable fact remains that Act 573's text differs from the law in *Stone*, so that suspect precedent should not be extended to these new circumstances. And it certainly cannot be applied as broadly as the district court did here, ignoring the narrowing of *Stone* that occurred even before *Lemon* was overruled.

The district court wrongly applied *Stone* broadly to mean that displaying a historical representation of the Ten Commandments in classrooms can only have a

25

Appellate Case: 26-1722     Page: 35     Date Filed: 05/29/2026 Entry ID: 5645521

religious purpose—"to proselytize"—which it concluded was buttressed by cher-

rypicked statements of legislators and an invented admission.  App. 2444; R. Doc.

188, at 19.[5]  But the district court wrongly ignored the cases post-dating *Stone* that

clarified that posting the Ten Commandments could have a secular purpose too and

that even prayers and nativity scenes can serve a secular purpose.  *See supra* 21-22.

And it failed to focus on the statutory text and context in assessing the statute's pur-

pose.  After requiring the display of the national motto and of the U.S. and Arkansas

flags, Ark. Code Ann. § 1-4-133(a)(1)(A)(iii), the statute requires the Ten Command-

ments to be displayed (if donated), *id.* § 1-4-133(a)(1)(B)(i).  Then it twice states "a

historical representation" is required and specifies a nonsectarian version of the text,

*see supra* 23-25, demonstrating the Act's purpose—as reflected in the statutory text

that it enacted and became law—was to acknowledge the historical significance of

the Ten Commandments, not to proselytize.  *See, e.g.*, *Corner Post, Inc. v. Bd. of Gov-*

*ernors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) ("'As this Court has repeatedly

stated, the text of a law controls over purported legislative intentions unmoored from

---

[5] Contrary to the district court's tortured reasoning, Arkansas's acknowledgement of what Act 573 plainly doesn't do on its face—*e.g.*, require classroom instruction about the Ten Commandments—is not an admission that Act 573 lacks a secular purpose. App. 2443-44; R. Doc. 188, at 18-19.

Appellate Case: 26-1722     Page: 36     Date Filed: 05/29/2026 Entry ID: 5645521

any statutory text'; the Court 'may not replace the actual text with speculation as to Congress' intent.'" (citations omitted)).

And even if the legislative record were relevant to ascertain a law's purpose,[6] the legislative hearings were focused on the historical significance of the Ten Commandments to our Nation's history, legal system, and education. *See, e.g.*, R. Doc. 166, at 14 (explaining "this is not about religion" and noting "the Ten Commandments are widely recognized as the foundation of Western law"); R. Doc. 181, at 5-8.[7] Regardless of whether a legislator may have had "religious *motives*," that's irrelevant even under *Lemon*'s purpose prong where "what is relevant is the legislative

---

[6] The district court insinuates Arkansas urged reliance on legislative transcripts. App. 2444; R. Doc. 188, at 19. In reality, Arkansas argued the "text of a law controls" and, in case the court rejected its argument, included the transcripts to rebut Plaintiffs' cherrypicked legislative-history excerpts, while also preserving the objection that videos are the best evidence. R. Doc. 180, at 13; *see* R. Doc. 181, at 5-6.

[7] Indeed, even the district court acknowledged that "facts about the historical significance of the Ten Commandments in public schools and other public spaces" were provided during the legislative hearings when criticizing Arkansas for not retaining a history expert until after it (wrongly) issued a preliminary injunction, App. 2446; R. Doc. 188, at 21, *see* PI Tr. 146:21-148:18; *id*. at 199:24-200:4—even though it's Plaintiffs' burden to "prov[e] a set of facts that would have historically been understood as an establishment of religion." *Hilsenrath ex rel. C.H. v. Sch. Dist. of Chathams*, 136 F.4th 484, 491 n.54 (3d Cir.), *cert. denied*, 146 S. Ct. 885 (2025) (quoting *Firewalker-Fields*, 58 F.4th at 122 n.7).

27

*purpose* of the statute." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 249 (1990) (plurality).

In short, even assuming *Stone* survives the express demise of *Lemon* and its progeny, its narrow holding cannot be extended here to hold that Act 573 violates the Establishment Clause.

### B. Act 573 does not violate the Establishment Clause as originally understood and as interpreted by binding precedent.

Act 573 also doesn't violate the Establishment Clause under the applicable historical-practices-and-understandings test that the Supreme Court articulated in *Galloway* and *Kennedy*. Contrary to the district court's assertion, the Supreme Court *did* "endorse" "this test in every context." App. 2445; R. Doc., 188, at 20. When analyzing an Establishment Clause claim, "[a]n analysis focused on original meaning and history … represent[s] the rule." *Kennedy*, 597 U.S. at 536.

If "history has not spoken to the 'specific practice' at hand," courts "look to the historical understandings of the Establishment Clause as informed by other relevant practices," *New Doe Child*, 901 F.3d at 1021 (quoting *Galloway*, 572 U.S. at 577), and ask whether the challenged practice or law implicates "hallmarks of religious establishments the framers sought to prohibit when they adopted the First Amendment." *Kennedy,* 597 U.S. at 537. As three circuits have now distilled the relevant inquiry: the question is "[h]ave plaintiffs' prov[en] a state of facts that would have

28

historically been understood as an establishment of religion?" *Nathan*, 136 F.4th at 491 n.54 (quoting *Hilsenrath*, 136 F.4th at 491 n.54).

Here, the answer is plainly no. Plaintiffs failed to prove Act 573 resembles any of the six hallmarks of a religious establishment. *See Kennedy*, 597 U.S. at 537 & n.5; *Shurtleff v. City of Boston*, 596 U.S. 243, 286 (2022) (Gorsuch, J., concurring in judgment); Michael W. McConnell, *Establishment and Disestablishment at the Founding, Part I: Establishment of Religion*, 44 Wm. & Mary L. Rev. 2105, 2144-46 (2003). It doesn't (1) exert control over an established church's doctrine or personnel, (2) mandate church attendance, (3) punish anyone for their religious exercise, (4) "restrict[] political participation by dissenters," (5) financially support an established church, or (6) give an established church a monopoly in carrying out a civil function. *See Shurtleff*, 596 U.S. at 286 (Gorsuch, J., concurring); *see Nathan*, 173 F.4th at 601-02. As the en banc Fifth Circuit concluded about Texas's similar law, requiring schools to post Ten Commandment displays "imposes neither penalty nor sanction, formal or informal," on students; students are free to "ignore" the Ten Commandments or "laugh at them." *Nathan*, 173 F.4th at 601. In short, Act 573 resembles none of the historical hallmarks of a religious establishment, and "even if *Shurtleff* does not cabin the Establishment Clause inquiry," Plaintiffs failed to carry their "burden to expand its reach." *Hilsenrath*, 136 F.4th at 491 n.54.

29

Although the district court concluded Act 573 flunked the historical-practices-and-understanding test, it didn't faithfully apply that test (which is unsurprising given its belief that "history is both unhelpful and irrelevant"). App. 2447; R. Doc. 188, at 22. Indeed, the district court discussed no hallmarks. The district court instead reasoned the lack of a "longstanding, widespread history of permanently displaying the Ten Commandments in public-school classrooms" means that "no historical practices" support Act 573 and that it is therefore unconstitutional. *Id.* In other words, the district court's analysis is: "if a practice does not fit within some historical tradition, it violates the Establishment Clause." *Nathan*, 173 F.4th at 606. But that inverts the required analysis. *Id.* To be sure, "[w]here history shows that the specific practice is permitted," courts "typically need go no further; the Establishment Clause claim fails." *New Doe Child*, 901 F.3d at 1021 (quoting *Galloway*, 572 U.S. at 577). But where history is silent on a particular practice, that practice is not presumed unconstitutional, much less rendered automatically unconstitutional as the district court held. Courts instead "look to the historical understandings of the Establishment Clause as informed by other relevant practices," *New Doe Child*, 901 F.3d at 1021, and "to prevail on [an] Establishment Clause claim," plaintiffs must show the challenged practice "resembles" the "hallmarks of religious establishment," *Hilsenrath*, 136 F. 4th at 491. Plaintiffs failed to carry this burden here.

30

That's unsurprising because displaying the Ten Commandments fits within historical practices that were not understood to be religious establishments. From mottos, *e.g.*, *New Doe Child*, 901 F.3d at 1021-24; *ACLU of Ohio v. Capitol Square Rev. & Advisory Bd.*, 243 F.3d 289, 299-01 (6th Cir. 2001) (en banc), to seals, *Shurtleff*, 596 U.S. at 287 n.11 (Gorsuch, J., concurring), to addresses and religious proclamations, *e.g.*, *Lynch*, 465 U.S. at 675 n.2; *McCreary County v. ACLU of Ky.*, 545 U.S. 844, 888 (2005); *Myers v. Loudoun Cnty. Pub. Schs.*, 418 F.3d 395, 404-05 (4th Cir. 2005), there is an "unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789," *New Doe Child*, 901 F.3d at 1022 (quoting *Lynch*, 465 U.S. at 674). Ten Commandment displays likewise can serve as "a passive acknowledgement of the roles of God and religion in our Nation's history." *City of Plattsmouth*, 419 F.3d at 778; *see* App. 689-91; R. Doc. 164-1, at 15-17 (discussing Ten Commandment displays around the nation)

Schools are not an exception to this history. R. Doc. 166, at 9-12. Instead, they were another context where acknowledgement of God and religious beliefs were pervasive. *See* App. 691-98; R. Doc. 164-1, at 17-24; App. 869-77; R. Doc. 164-2, at 13-21. Although in the "early republican periods, there was no such thing as public education in the modern sense," there was also "no such thing as a secular school." McConnell, 44 Wm. & Mary L. Rev. at 2171; *see* App. 873, 875-75; R. Doc. 164-2, at

31

17, 19-20.  And the federally funded public education that did exist was done by "Christian missionaries" who "partnered" with the federal government.  App. 696; R. Doc. 164-1, at 22.  Indeed, both Jefferson and Madison "used federal funds to directly support schools run by religious groups," Nathan S. Chapman, *Forgotten Federal-Missionary Partnerships: New Light on the Establishment Clause*, 96 Notre Dame L. Rev. 677, 680 (2020).

Moreover, even after States had "established public school systems" in the 1800s, "public education was far from secular in character." McConnell, 44 Wm. & Mary L. Rev. at 2174.  To the contrary, "[f]rom its inception, … American public education was religious but nonsectarian."  John C. Jeffries, Jr. & James E. Ryan, *A Political History of the Establishment Clause*, 100 Mich. L. Rev. 279, 299 (2001).  And the Ten Commandments and Bible were incorporated into the public schools throughout our Nation's history.  App. 691-698; R. Doc. 164-1, at 17-24; R. Doc. 181, at 22-23.  Indeed, "Bible reading was prominent in public schools from their origin until the Supreme Court declared the practice to be unconstitutional in 1963," and "[t]he Ten Commandments were a prominent part of American education for almost three centuries."  Hall & Picciotti-Bayer, 34 Wm. & Mary Bill Rts. J. at 223; *see* Thomas H. Bickel, Engel *Was Grievously Wrong and Should Be Overruled*, 2023 Harv. J.L. & Pub. Pol'y Per Curiam 6, 1 (2023) (explaining that many public schools

32

required Bible reading and "50% reported" "homeroom daily devotional exercises" in 1960 (citing Adam Laats, *Our Schools, Our Country*, 36 J. of Religious Hist. 319, 321-22 (2012)); Jenna Weismann Joselit, *Set in Stone: America's Embrace of the Ten Commandments* 2, 63 (2017) (explaining that, "[e]ver since the mid-nineteenth century," Americans put the Ten Commandments "just about everywhere," including in schools and that they "were once a central feature of the moral education of American children").

Even Plaintiffs' purported expert admitted that schools included Bible readings and references to the Ten Commandments throughout the 1800s and 1900s and the further back in time (*i.e.*, closer to the Founding) he looked, the more religious the schools and textbooks were. App. 108-13; R. Doc. 8-12, at 19-24; PI Tr. 144:20-160:21.[8] And he admitted "approximately 30% of the selections" in the 1844 edition

---

[8] This Court cannot "outsource to 'experts' [its] Article III duty to decide questions of law," *Nathan*, 173 F.4th at 607, which the district court did in its preliminary-injunction opinion, R. Doc. 71, at 26-29, that is cited in its summary-judgment decision, App. 2441; R. Doc. 188, at 16. Although Plaintiffs' purported expert, Steven Green, largely offered improper legal opinions about the original meaning of the First Amendment, and Arkansas challenged his testimony and conclusions with evidence and arguments, R. Doc. 54; PI Tr. 240:16-247:11, the district court wrongly deferred to him at the preliminary-injunction stage. It ignored that he admitted glaring holes in knowledge (including that he did not know what *Anno Domini* means or that the Continental Congress did not meet on Sundays), PI Tr. 136:20-139:18, and criticized Arkansas for not hiring an expert. R. Doc. 71, at 27. In its summary-judgment decision, the district court repeats its criticism that Arkansas did not hire an expert before the preliminary-injunction hearing and, other than the expert report,

Appellate Case: 26-1722    Page: 43    Date Filed: 05/29/2026 Entry ID: 5645521

of the McGuffey *Readers* were religious, App. 115; R. Doc. 8-12, at 26 n.76—*after* government-run schools became more prevalent, App. 109, R. Doc. 8-12, at 20; *see, e.g.*, *Roake*, 170 F.4th at 304 (Ho, J., concurring) (describing common "textbooks used in early American education" that "featured religious material including the Ten Commandments"); Letter from Chief Justice William H. Taft to Henry Ford re: McGuffey's Readers (Oct. 31, 1924) (explaining he "attended public schools" and "began with the first of McGuffey readers and continued clear through them to the sixth");[9] McGuffey's Fourth Eclectic Reader 207-210 (1920 rev. ed.) (describing a young child's colloquy with a judge about not bearing false witness and the Ten Commandments).[10] Other textbooks from the 1820s and 1840s likewise "included or taught about the Ten Commandments." Hall & Picciotti-Bayer, 34 Wm. & Mary Bill Rts. J. at 221-22.

---

doesn't cite or discuss any other historical evidence and scholarship Arkansas cited. App. 2446; R. Doc. 188, at 21. This Court should provide needed clarity that courts can and should consider such historical evidence and scholarship and that it's unnecessary to hire experts—especially for defendants because plaintiffs bear the burden of proof.

[9] Available at https://www.thehenryford.org/collections/explore/artifact/190328#slide=gs-245863.

[10] Available at https://www.gutenberg.org/files/14880/14880-pdf.pdf.

Appellate Case: 26-1722    Page: 44    Date Filed: 05/29/2026 Entry ID: 5645521

This history demonstrates that Act 573's requirement that schools post donated Ten Commandments displays on classroom walls is consistent with historical practices and, like other public acknowledgments of God or the Ten Commandments, doesn't violate the Establishment Clause. *See supra* 31. And this conclusion is buttressed by *corpus linguistics* analysis that indicates "government displays of religious symbols" and "prayers or religious practices in public schools" would *not* be understood to violate the Establishment Clause's original meaning. Stephanie H. Barclay et al., *Original Meaning and the Establishment Clause: A Corpus Linguistics Analysis*, 61 Ariz. L. Rev. 505, 509-10 (2019). Indeed, "it appears that no one 'ever claimed at the founding that the display of religious symbols was a form of religious establishment.'" *Nathan*, 173 F.4th at 602 (quoting Nathan S. Chapman & Michael W. McConnell, *Agreeing to Disagree: How the Establishment Clause Protects Religious Diversity and Freedom of Conscience* 159 (2023)).

In sum, Plaintiffs failed to show Act 573 has a single hallmark, much less that it is an establishment when the hallmarks are "considered in the aggregate." *Hilsenrath*, 136 F.4th at 494-95 & n.3 (Phipps, J., concurring). Act 573 therefore does not violate the Establishment Clause.

Appellate Case: 26-1722     Page: 45     Date Filed: 05/29/2026 Entry ID: 5645521

**C. Act 573 displays are not unconstitutionally coercive.**

At various points, the district court also seems to embrace Plaintiffs' theory that Act 573 violates the Establishment Clause because the displays are coercive under *Stone* and school-prayer cases. App. 2441-43; R. Doc. 188, at 16-18. That's wrong for several reasons.

First, *Stone* is not good law, as previously explained, and *Stone* didn't apply a coercion test. *Stone* didn't use the term "coercion" a single time, but rather expressly applied *Lemon*'s secular-purpose test. *See Stone*, 449 U.S. at 43. And "nothing in *Stone* holds—or even suggests—that a passive display of the Ten Commandments is somehow coercive." *Roake*, 170 F.4th at 302 (Ho, J., concurring).

Second, coercion is not a free-floating factor untethered from history. "[O]ffense … does not equate to coercion." *New Doe Child*, 901 F.3d at 1023-24 (quoting *Galloway*, 572 U.S. at 589). Instead, "attention to coercion" "highlights what [the Establishment Clause] has long been understood to prohibit." *Id.* at 1020. And what the Establishment Clause prohibits is a challenged law or practice bearing the "hallmarks of a religious establishment." *Kennedy,* 597 U.S. at 537. After all, "coercion along" the lines of mandatory church attendance and mandatory participation in formal religious exercises "was among the foremost hallmarks of religious establishments the framers sought to prohibit when they adopted the First

36

Amendment." *Id.*; *see id.* n.5 (favorably citing Justice Gorsuch's concurrence in *Shurtleff* and Justice Scalia's dissent in *Lee v. Weisman*, 505 U.S. 577 (1992)); *Shurtleff,* 596 U.S. at 286 (Gorsuch, J., concurring) (explaining that "most of these [six] hallmarks reflect forms of coercion" (citation modified)); *Lee*, 505 U.S. at 640-42 (Scalia, J., dissenting) (explaining the Establishment Clause is concerned about legal coercion, not peer pressure or psycho-coercion). And Plaintiffs have failed to prove Ten Commandments displays resemble any historical hallmark of religious establishment. *See supra* 28-35.

Third, the school-prayer cases are inapposite. That the Supreme Court has found mandatory school prayer "involving public school students to be problematically coercive," *Kennedy*, 597 U.S. at 541, doesn't mean that posters with a historical representation of the Ten Commandments are. After all, the school-prayer cases involved pressure to participate in "formal religious exercise[s]." *Lee*, 505 U.S. at 586; *see, e.g.*, *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 312 (2000) (explaining the challenged prayer had the "improper effect of coercing those present to participate in an act of religious worship"). Act 573 "does not compel any student to engage in formal religious exercise," *Nathan*, 173 F.4th at 602, but simply requires *schools* to display a poster of a historical representation of the Ten Commandments (if donated). That's it. It doesn't "mandate students pray, adopt any faith, or engage in

37

any other 'unmistakably religious exercises' like 'devotional reading and recitation of the Holy Bible.'" *Id.* (quoting *Sch. Dist. of Abington Tp. v. Schempp*, 374 U.S. 203, 307 (1963) (Goldberg, J., concurring)).  Like a motto, a poster thus "involves no coercion," "does not purport to compel belief," and "does not command participation in any form of religious exercise." *Capitol Square*, 243 F.3d at 299.  And even if this Court wrongly accepted that "subtle and indirect" coercion was sufficient under the required historical test, *Lee*, 505 U.S. at 593,[11] unlike prayers where students may be pressured to stand or bow their heads (and may be conspicuous if they don't do so), posters do not pressure students to do anything (and a student's decision to not read a poster wouldn't be conspicuous).

Fourth, the district court was wrong to conclude that displaying the Ten Commandments in a public-school classroom is necessarily coercive (for all ages K-12) simply because students must generally attend school.[12]  Public schools do not need

---

[11] *See New Doe Child*, 901 F.3d at 1020 (explaining that the *Galloway* majority tied prohibited coercion "to history," that the plurality considered "the backdrop of historical practice," and that the concurrence "look[ed] at the kind of coercion that was 'a hallmark of historical establishments of religion'" (quoting *Galloway*, 572 U.S. at 587 (plurality), and then *id.* at 608 (Thomas, J., concurring)).

[12] Arkansas parents and legal guardians also have the option of homeschooling their students, and parents of students participating in the Educational Freedom Account Program may direct funds to a private school of their choice.  R. Doc. 181, at 23.

Appellate Case: 26-1722     Page: 48     Date Filed: 05/29/2026 Entry ID: 5645521

to be purged of anything with religious significance.  Indeed, that contradicts the Supreme Court's repeated admonishment that the Establishment Clause does not "'compel the government to purge from the public sphere' anything an objective observer could reasonably infer endorses or 'partakes of the religious.'" *Kennedy*, 597 U.S. at 535; *see New Doe Child*, 901 F.3d at 1022; *Hilsenrath*, 136 F.4th at 492. And even when children have observed religious activities and messages, courts have not concluded that government acknowledgement of religion becomes coercive.  *See Galloway*, 572 U.S. at 591 (plurality) (children's attendance at town meetings did not transform legislative prayers into coercion); *id.* at 598 (Alito, J., concurring); *New Doe Child*, 901 F.3d at 1023-24, 1027 (children's need to carry money inscribed with "In God We Trust" did not make the "appearance" of that message "coercive").  In short, Act 573 "displays do not pressure anyone to engage in religious exercise or observance," *Nathan*, 173 F.4th at 603, and the district court's analysis of Plaintiffs' establishment claims was wrong across the board.  The district court should therefore have granted summary judgment for Arkansas.

### D. At the very least, Plaintiffs are not entitled to summary judgment.

Regardless, even if the district court were correct about the relevant legal tests, Plaintiffs' claims still fail as a matter of law or, at the very least, there would be a fact question that necessitates reversal and remand.

Appellate Case: 26-1722     Page: 49     Date Filed: 05/29/2026 Entry ID: 5645521

Even if *Stone* were still good law, Plaintiffs have failed to introduce evidence showing that Act 573 displays are communicating a purely religious message. Not only did they introduce evidence of only three posters in classrooms, but they also omitted the surrounding context, R. Doc. 166, at 3, precluding them from proving displays communicate only a religious message. *See, e.g.*, *Van Orden*, 545 U.S. at 701-02 (Breyer, J., concurring) (analyzing the context to assess what message a Ten Commandments display was conveying). Posters that may be placed in other classrooms could be accompanied by flags, App. 223; R. Doc. 58-1, at 91, messages from diverse faith traditions, *see* D. Arkin and E. Ortiz, *How some Texas teachers are fighting the Ten Commandments law in classrooms*, NBC News (Sept. 14, 2025), https://tinyurl.com/3ctny3p6, or a variety of other things, *H.B. 71 Guidance for Louisiana Schools*, https://tinyurl.com/45u2pvbm.

Moreover, even if an abstract-coercion test were appropriate, Plaintiffs have still failed to prove an Establishment Clause violation. Original-Plaintiffs offered speculation about how their students would feel about hypothetical future displays and their surrounding context. R. Doc. 166, at 14-18; R. Doc. 181, at 39. And later-added Plaintiffs offered little more, with at least one acknowledging that her student had not done anything differently because of an Act 573 poster. R. Doc. 181, at 50. The district court also failed to acknowledge the evidence that school districts

40

Appellate Case: 26-1722     Page: 50     Date Filed: 05/29/2026 Entry ID: 5645521

"seek[] to respect the diverse religious views of all students and strive[] to make all students feel safe, welcome, and included." R. Doc. 181, at 74-76. Thus, even under the wrong legal tests, Plaintiffs are not entitled to summary judgment.

Accordingly, the Court should reverse the district court and render judgment for Arkansas or, at the very least, remand for further proceedings.

## IV.  ACT 573 DOES NOT VIOLATE THE FREE EXERCISE CLAUSE.

Like its Establishment Clause analysis, the district court's Free Exercise Clause analysis is flawed. Act 573 does not violate Plaintiffs' free-exercise rights.

Usually, States are "free to place incidental burdens on religious exercise so long as [they] do[] so pursuant to a neutral policy that is generally applicable." *Mahmoud*, 606 U.S. at 564. If there is a burden, courts will "ask if the burdensome policy is neutral and generally applicable." *Id.* If it is, then the free-exercise claim fails, *New Doe Child*, 901 F.3d at 1025; if it is not, then courts will "ask whether the policy can survive strict scrutiny," *Mahmoud*, 606 U.S. at 564.

When, however, "the burden imposed is of the same character as that imposed in [*Wisconsin v.*] *Yoder*, [406 U.S. 205 (1972)]," courts proceed straight to strict scrutiny. *Id.* at 564. A *Yoder*-type burden exists when (1) a requirement "submit[s] … children to instruction" (2) "that poses a 'very real threat of undermining' the religious beliefs and practices that the parents wish to instill" or "substantially

41

interfer[es] with the[ir] religious development." *Id.* at 530, 561 n.10 (quoting *Yoder*, 406 U.S. at 218). That question is "fact-intensive," turning on "the specific context in which the instruction or materials at issue are presented," including whether they are "presented in a manner that is 'hostile' to religious viewpoints and designed to impose" pressure on students. *Id.* at 550.

### A. Act 573 does not burden religious exercise.

The district court first concluded that parents' free-exercise rights are burdened when the government "requires them to submit their children to *instruction* that poses 'a very real threat of undermining' the religious beliefs and practices that the parents wish to instill." App. 2447; R. Doc. 188, at 22 (emphasis added) (quoting *Mahmoud*, 606 U.S. at 530). But Act 573 does not impose religious instruction. *See infra* 49-50. Indeed, the *lack* of instruction is a reason the district court found Act 573 violates the Establishment Clause. *See supra* 26; App. 2443-44; R. Doc. 188, at 18-19.

Act 573 displays are simply hung on a wall. And a display on the wall doesn't require or "direct the Plaintiffs to *do* anything"; it doesn't "force[] a person to act, or refrain from acting, in violation of his or her religious beliefs, by threatening sanctions, punishment, or denial of an important benefit." *New Doe Child*, 901 F.3d at 1026 (discussing what constitutes a substantial burden under RFRA); *see B.W.C. v.*

42

*Williams*, 990 F.3d 614, 620 (8th Cir. 2021) (explaining "[r]eligious exercise is not burdened unless 'compliance cause[s] the objecting party to violate its religious beliefs, as it sincerely understands them'" (quoting *Little Sisters of the Poor v. Pennsylvania*, 591 U.S. 657, 692 (2020) (Alito, J., concurring))); *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (no free-exercise injury where plaintiff was not compelled or prohibited from doing anything "required by [her] religion" or compelled "to affirm or disavow a belief"). Thus, Plaintiffs cannot show that Act 573 burdens any *exercise*.

Concluding otherwise, the district court found free-exercise burdens based on nothing more than two students being "expose[d]" to the Ten Commandments. App. 2448, 2449; R. Doc. 188, at 23, 24. For the two students the district court used as examples, one only "saw the display," which resulted in the parent "explain[ing]" three words. App. 2448; R. Doc. 188, at 23. The other observed the display, without having conversations with peers or school employees, and recited some of it during a conversation with the parent. *Id.*; App. 1258-59; R. Doc. 164-9, at 16-17.

Just because some Plaintiffs may disagree with a perceived message on a classroom poster doesn't transform the poster into a free-exercise burden. *See Nathan*, 173 F.4th at 609 ("disagreement alone does not transform [a similar law] into religious

Appellate Case: 26-1722     Page: 53     Date Filed: 05/29/2026 Entry ID: 5645521

coercion”); *Perrier-Bilbo v. United States*, 954 F.3d 413, 430 (1st Cir. 2020) (“Mere exposure to different religious ideas … does not prevent [plaintiff] from ascribing to or pursuing her own beliefs.”). The Free Exercise Clause does not “require the Government *itself* to behave in ways that the individual believes will further his or her spiritual development or that of his or her family,” *Bowen v. Roy*, 476 U.S. 693, 699 (1986), nor does it allow citizens to dictate what the government may say on its classroom walls, *cf. Mahmoud*, 606 U.S. at 568 (emphasizing that parents were not seeking “the right to micromanage the public school curriculum”); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 32 (2004) (Thomas, J., concurring) (“[T]he mere fact that [plaintiff] disagrees with this part of the Pledge does not give him a veto power over the decision of the public schools that willing participants should pledge allegiance to the flag in the manner prescribed by Congress.”).

Seeing the Ten Commandments is not a religious exercise, especially when students are not forced to read it nor penalized for not reading it. *See Bauchman v. W. High Sch.*, 132 F.3d 542, 557 (10th Cir. 1997) (free-exercise claim failed where choir member had a “choice whether or not to sing songs she believed infringed upon her exercise of religious freedom, with no adverse impact on her academic record”). Indeed, it is less of a burden than compelling *New Doe Child* plaintiffs to read, carry, and use money “emblazoned with the words ‘In God We Trust’” which allegedly

44

Appellate Case: 26-1722    Page: 54    Date Filed: 05/29/2026 Entry ID: 5645521

"forc[ed] them to affirm and spread a religious message with which they disagree." 901 F.3d at 1025-26. There, this Court correctly concluded that "the statutes requiring the inscription of the national motto on U.S. coins and currency" did not impose a burden that could support a free-exercise or RFRA claim—even though child-plaintiffs there lacked an alternative to using cash and even though plaintiffs were "continually confronted" with what they perceived to be "an offensive religious message." *Id.* at 1018, 1024-27.

The Court should reach the same conclusion here: Act 573—a law that requires public schools to post donated displays of historical representations of the Ten Commandments and does not require or prohibit religious exercise—is nothing like laws that courts have concluded impose more than an incidental burden on religious exercise.

### B. Even if it imposes a burden, Act 573 is neutral and generally applicable.

The district court did not analyze whether Act 573 is neutral and generally applicable, noting its belief that Act 573 is unconstitutional under the *Yoder* analysis "regardless of whether [it] is neutral or generally applicable." App. 2449; R. Doc. 188, at 24 (quoting *Mahmoud*, 606 U.S. at 564-65). But Act 573 is not subject to that analysis, *see infra* 49-52, and it easily survives the neutral-and-generally-applicable test.

45

Appellate Case: 26-1722     Page: 55     Date Filed: 05/29/2026 Entry ID: 5645521

Act 573 is neutral.  Plaintiffs must (but failed to) demonstrate that Act 573 "is not neutral" by showing that its "object … is to infringe upon or restrict *practices* because of their religious motivation."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) (emphasis added).  Plaintiffs did not make and could not have made that showing because a law requiring a nonsectarian version of the Ten Commandments to be displayed if donated doesn't have the "object or purpose" of "suppress[ing] … religion or religious conduct."  *New Doe Child*, 901 F.3d at 1025 (quoting *Lukumi*, 508 U.S. at 533).  Like a motto, Act 573 displays "involve[] no coercion," do "not purport to compel belief or acquiescence," and do "not command participation in any form of religious exercise."  *Capitol Square*, 243 F.3d at 299.  Nor does it require the exclusion of other religious ideas—either by targeting particular religious beliefs, providing individual exemptions, or prohibiting religiously motivated conduct.  *Lukumi*, 508 U.S. at 532.

Act 573 is also generally applicable; it applies to every public school that receives the requisite donations, without exception.  Act 573 doesn't "direct the Plaintiffs to *do* anything," *New Doe Child*, 901 F.3d at 1026, and it doesn't "prohibit[] conduct because it is undertaken for religious reasons."  *Lukumi*, 508 U.S. at 532; *see Fulton v. City of Philadelphia*, 593 U.S. 522, 534 (2021).

46

The district court wrongly concluded that Act 573 is not neutral and subject to strict scrutiny because it is "denominationally preferential" contrary to Arkansas's "misleading at best" claim that it's nonsectarian. App. 2449; R. Doc. 188, at 24.[13] But it's accurate, not misleading, to assert that Act 573 contains a nonsectarian text based on precedent and evidence. *See supra* 23-25. And even if the text were "sectarian," that would not make Act 573 unconstitutional. *See supra* note 4. To the extent the district court assumed Act 573 is not neutral, because the Ten Commandments have not only secular, historical significance but also religious significance, that's wrong too.

That Act 573 acknowledges religion or incorporates scripture doesn't negate its neutrality and general applicability; if it were otherwise, this Court would not have concluded that statutes requiring "In God We Trust" to be inscribed on currency is "neutral and generally applicable" in *New Doe Child*, 901 F.3d at 1025. After all, the plaintiffs there alleged that "the motto is an explicit endorsement of Christianity,"

---

[13] Contrary to the district court's assertion, Arkansas never argued Act 573 is generally "unobjectionable" because it's nonsectarian. App. 2449; R. Doc. 188, at 24; *see* R. Doc. 71, at 28. Arkansas instead noted the fact that Act 573's text is nonsectarian when explaining some of the differences between Act 573 and the law at issue in *Stone*, and that Act 573 doesn't show hostility. R. Doc. 165, at 9-10; *see* Appellant's Br., No. 25-2713, at 20 n.6. "[S]incere objections" to a poster's content, however, do not mean a poster is coercive or "pressure[s] anyone to engage in religious exercise or observance." *Nathan*, 173 F.4th at 603.

Appellate Case: 26-1722    Page: 57    Date Filed: 05/29/2026 Entry ID: 5645521

"privileges monotheism," and forced them "into proselytizing a religious idea they oppose" when they use money, yet the Court concluded the statutes were still "neutral and generally applicable" and did not "purport[] to burden anyone on the basis of religious belief." *Id.* at 1019, 1022-23, 1025. The Court should reach the same conclusion here.

What's more, the consequences of concluding that a law or display's religious significance is sufficient to negate its neutrality and general applicability would be a dramatic departure from precedent, and would require numerous cases to come out differently. That's because Establishment Clause claims could simply be repackaged as free-exercise claims to "purge" all religious acknowledgments from the "public sphere," contrary to longstanding history, tradition, and practice. *Kennedy*, 597 U.S. at 535; *see, e.g.*, *Lynch*, 465 U.S. at 678, 687 (recognizing the Court has refused to "mechanically invalidat[e] all governmental conduct or statutes that confer benefits or give special recognition to religion in general or to one faith" and allowing nativity in city display "notwithstanding [its] religious significance"); *Capitol Square*, 243 F.3d at 292 (explaining that Matthew 19:26 is the source of Ohio's official motto); 5 U.S.C. § 6103(a) (making "Christmas Day" a "legal public holiday[]"); *Ganulin v. United States*, 71 F. Supp. 2d 824, 829 (S.D. Ohio 1999) (dismissing claim alleging that § 6103 interferes with plaintiffs' ability to live "consistent[ly] with his beliefs and

Appellate Case: 26-1722     Page: 58     Date Filed: 05/29/2026 Entry ID: 5645521

practices" and "to effectively instruct his children"), *aff'd*, 238 F.3d 420 (6th Cir. 2000).

In sum, Act 573 does not "burden anyone on the basis of religious belief" and is "neutral and generally applicable," *New Doe Child*, 901 F.3d at 1025, so the district court erred in holding it violates the Free Exercise Clause.

**C. Act 573 does not impose a *Yoder*-like burden to trigger strict scrutiny.**

Strict scrutiny is triggered when the challenged requirement (1) "submit[s] … children to instruction" and (2) "pos[es] a 'very real threat of undermining the religious beliefs and practices that the parents wish to instill" or "substantially interfer[es] with the[ir] religious development." *Mahmoud*, 606 U.S. at 530, 561 n.10 (quoting *Yoder*, 406 U.S. at 218). Plaintiffs' free-exercise challenge to Act 573 fails both elements. The district court seems to have wrongly concluded otherwise because the Act 573 displays have religious significance and contains text derived from scripture, App. 2449; R. Doc. 188, at 24, but "no case suggests that the mere presence of religious language" makes a poster on a wall "religious coercion," *Nathan*, 173 F.4th at 610.

First, Act 573 does not require students to submit to instruction. To meet this element, the school must override the parents' control of the child's religious upbringing by, for example, "instruct[ing]" students in ways that "explicitly contradict

49

their parents' religious views," *id.* at 555; "facilitati[ng] … a child's gender transition" "[c]ontrary to [the parents'] instructions," *Mirabelli v. Bonta*, 146 S. Ct. 797, 800-01, 802 (2026) (per curiam); or "compel[ling] them … to perform acts undeniably at odds with fundamental tenets of their religious beliefs," *Yoder*, 406 U.S. at 218. Act 573 does none of those things. There is "[n]o religious curriculum, no theistic lesson plans"; "[a]ll the law requires is a poster on a classroom wall." *Nathan*, 173 F.4th at 609. It would thus be an extension of *Yoder* and *Mahmoud* to apply them to Arkansas's decision about what should go on its classroom walls, especially when Plaintiffs are not seeking "to have their children opt out of a particular educational requirement" like *Mahmoud* plaintiffs but rather are seeking to "micromanage" what goes on every single classroom wall. 606 U.S. at 568; *cf. Newdow v. Rio Linda Union Sch. Dist.*, 597 F.3d 1007, 1012-13 (9th Cir. 2010) (rejecting argument plaintiff has an establishment right "to prevent teachers from leading other students from reciting the Pledge of Allegiance").

Second, for many of the same reasons, Act 573 does not "*substantially* interfere[]" with parent Plaintiffs' rights and is nothing like the challenged policy in *Mahmoud*. 606 U.S. at 550 (emphasis added). In *Mahmoud*, the school board introduced "'LGBTQ+-inclusive' storybooks" and provided teachers with "associated educational instructions" that were "designed to 'disrupt' children's thinking about

50

sexuality and gender." 606 U.S. at 529. The books did not just refer to things like "same-sex marriage as an existing practice" but instead presented "acceptance of same-sex marriage as a perspective that should be celebrated," and similarly presented child-gender transitioning as "highly positive." *Id.* at 552-53. Importantly, the books also presented "contrary view[s]"—*i.e.*, the parent-plaintiffs' beliefs—"as something to be reprimanded," and teachers were instructed to "reprimand" students. *Id.* at 553-54, 556.

In contrast, Act 573 calls for a passive display of a "historical representation" of the Ten Commandments to reflect their historical significance to our Nation. Ark. Code Ann. § 1-4-133(a)(1)(B)(i)-(ii). Far from showing "'hostil[ity]' to religious viewpoints," *id.* at 550, the Act shows respect as a nonsectarian text was selected instead of a version closely identified with a single faith tradition. What's more, there is no instruction that this version or the Ten Commandments are generally correct as a religious or philosophical matter, and school districts strive to be "inclusive of all religions" and make everyone "feel included." App. 158; R. Doc. 58-1, at 26.

It's therefore unsurprising that Plaintiffs could not prove that Act 573 had substantially interfered or would substantially interfere with student-Plaintiffs' free exercise or parent-Plaintiffs' right to direct their children's religious upbringing. The best evidence of alleged "deleterious effects" was that one parent answered her

51

Appellate Case: 26-1722    Page: 61    Date Filed: 05/29/2026 Entry ID: 5645521

child's questions about the display, and that another child could recite some of the display's language to parents, App. 2448; R. Doc. 188, at 23, but the fact a poster prompted conversations doesn't show that it *substantially* interfered with free-exercise rights. And the district court tellingly does not even try to identify a supposed free-exercise burden for any other Plaintiff. Indeed, many parent-Plaintiffs already expose their children to the Ten Commandments, including through active instruction, and thus their rights certainly cannot be substantially burdened by a poster on the wall, *see, e.g.*, App. 933-34; R. Doc. 164-4, at 27:24-28:13 (sending children to Christian summer camp where they learned the Ten Commandments); App. 991-92; R. Doc. 164-5, at 21:21-22:3 (admitting that children likely learn about the Ten Commandments at church); App. 639; R. Doc. 90-3, ¶ 5 (admitting parents "believe in the Ten Commandments"); App. 1191; R. Doc. 164-8, at 30:16-18 (admitting they teach their children about the Ten Commandments). Act 573 thus doesn't implicate a *Yoder*-like burden, and strict scrutiny does not apply.

\* \* \*

Hanging a poster with a historical representation of the Ten Command-ments—something that has undisputable significance to our Nation's history and heritage—on a wall does not violate the Free Exercise Clause as a matter of law. And even if a poster could substantially interfere with parents' right to direct their

52

students' religious upbringing, Plaintiffs have failed to prove Act 573 will substantially interfere with their rights, so Arkansas is still entitled to summary judgment. Alternatively, there are genuine issues of material fact about whether Act 573 violates the free-exercise rights of specific Plaintiffs, so the district court still erred by granting summary judgment to all Plaintiffs.

## V. THE INJUNCTION EXCEEDS THE DISTRICT COURT'S AUTHORITY.

To top off its other errors, the district court issued an overbroad injunction. Rather than enjoining Defendants from enforcing Act 573 in student-Plaintiffs' classrooms and libraries, the district court enjoined enforcement in *every* classroom in *every* school in Defendants' districts. App. 2450-51; R. Doc. 188, at 25-26. And it did so without any evidence that child-Plaintiffs themselves ever go into classrooms other than their own, much less that they enter classrooms in *other* schools, and despite several Plaintiffs' lack of standing. *See supra* 13-18. This flagrant "embrac[e]" of "an imperial Judiciary" is another reversible error. *Trump v. CASA, Inc.*, 606 U.S. 831, 858 (2025).

Courts' equitable power is limited to crafting injunctions that "offer complete relief *to the plaintiffs before the court*," not "*everyone* potentially affected by an allegedly unlawful act." *Id.* at 852 (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) ("An injunction must

53

be tailored to remedy specific harm shown."). So courts cannot extend injunctions to provide relief to others, even "similarly situated individuals." *CASA*, 606 U.S. at 852-53, 856.

Yet that is what the district court did under the guise of providing "complete relief" to Plaintiffs. R. Doc. 188, at 25. Relying on Plaintiffs' "bubble injunction" strawman, PI Tr. 225:2-14;[14] R. Doc. 109, at 3, the district court incorrectly asserts Arkansas requested an injunction that would require "removing and re-hanging posters" based on student-Plaintiffs' daily movements and be unworkable. App. 2451; R. Doc. 188, at 26. But as Arkansas repeatedly explained, an injunction could easily be written to prohibit Act 573 displays in the "specific locations that Plaintiffs have identified" where their students will likely go. R. Doc. 107, at 7 n.3; *see, e.g.*, R. Doc. 53, at 51-52. In other words, preventing Defendants from placing posters in fifth-grade classrooms and twelve-grade classrooms is not necessary to "protect" a kindergartner plaintiff from an Act 573 display unless there's evidence that specific kindergartener goes into those other classrooms (especially when those classrooms are in different schools). *See* PI Tr. 280:9-282:5. Because Plaintiffs have failed to offer evidence student-Plaintiffs go into locations other than their classrooms, the

---

[14] The preliminary-injunction hearing transcript is available at App. 316-608.

Appellate Case: 26-1722    Page: 64    Date Filed: 05/29/2026 Entry ID: 5645521

injunction must be limited to their classrooms and libraries. R. Doc. 180, at 25-26; R. Doc. 181, at 3-4.

In passing, the district court insists "the realities" of student-Plaintiffs' experiences mean an injunction limited to Plaintiffs' classrooms and libraries would be too narrow. App. 2451; R. Doc. 188, at 26. And it refers to its preliminary-injunction decision, which attempted to justify the overbroad preliminary injunction based on evidence that *other* students, at some point, "occasionally travel from school to school to participate in" extracurricular activities *absent* "proof that any of the parent- or child-Plaintiffs participate" in those types of extracurriculars. R. Doc. 71, at 34. Even after discovery, Plaintiffs presented no evidence showing their students participate in activities that require them to enter classrooms other than their own. Therefore, the district court exceeded its authority by issuing an injunction that extends to *thousands* of classrooms, *see* PI Tr. 182:5-14; 203:15-18, when Plaintiffs will have complete relief from alleged injuries by simply prohibiting enforcement of Act 573 in, at most, *dozens* of classrooms and libraries.

## Conclusion

For the foregoing reasons, the Court should reverse and hold Arkansas is entitled to summary judgment on all claims or, at the very least, reverse and remand for further proceedings.

Appellate Case: 26-1722    Page: 65    Date Filed: 05/29/2026 Entry ID: 5645521

Respectfully submitted,

TIM GRIFFIN
 Arkansas Attorney General

AUTUMN HAMIT PATTERSON
 Solicitor General

NOAH P. WATSON
 Deputy Solicitor General

 OFFICE OF THE ARKANSAS
 ATTORNEY GENERAL
101 West Capitol Avenue
Little Rock, Arkansas 72201
(501) 682-2007
autumn.patterson@arkansasag.gov

*Counsel for Intervenor-Appellant*

56

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,902 words, excluding the parts exempted by Fed. R. App. P. 32(f).

I also certify that this brief complies with the requirements of Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in 14-point Equity A, using Microsoft Word.

I further certify that this PDF file was scanned for viruses, and no viruses were found on the file.

*/s/ Autumn Hamit Patterson*
Autumn Hamit Patterson

## CERTIFICATE OF SERVICE

I certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

*/s/ Autumn Hamit Patterson*
Autumn Hamit Patterson

Appellate Case: 26-1722    Page: 67    Date Filed: 05/29/2026 Entry ID: 5645521